UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROGER WILLIAMS,

    Plaintiff,

v.                                              Case No. 8:01-cv-415-T-23MAP

DALE C. LANDRESS, *et al.*,

    Defendants.
_____/

## **O R D E R**

Williams' section 1983 civil rights complaint alleges that his civil rights were violated when defendants Landress and Moskowitz failed to timely change his cell assignment to preclude an attack by his cellmate. Williams' original civil rights complaint named the defendants as C. Dale Landress, the warden of the facility at the time of the assault, and Michael Moore, the Secretary of the Florida Department of Corrections. The defendants opposed the complaint with a motion to dismiss, or in the alternative, a motion for summary judgment (Doc. 15). The motion for summary judgment was granted (Doc. 22). On appeal, the Eleventh Circuit reversed (Doc. 32) because the court did not warn Williams prior to ruling that the motion would be reviewed as one for summary judgment.

Upon remand, defendants Landress and Moore filed another motion to dismiss (Doc. 34), which prompted Williams to seek leave to file an amended complaint. Williams' motion was granted (Doc. 36) and he was allowed to file an amended

complaint (Doc. 37) deleting Moore as a named defendant and adding Lt. Carole Moskowitz.

Pending is a motion for summary judgment (Doc. 61) filed by defendants Landress and Moskowitz.  Having considered the motion and Williams' opposition (Doc. 64), the court concludes that a judgment should be entered in favor of the defendants.

## SUMMARY JUDGMENT

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  See *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001).  The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Johns v. Jarrard*, 927 F.2d 551, 555 (11th Cir. 1991).  The material before the court must be viewed in the light most favorable to the non-moving party and show that the non-moving party is not entitled to relief under any set of facts alleged in the complaint. *See generally*, *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590 (11th Cir. 1995).  Even though allegations in a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam), *Tannenbaum v. United States*, 148 F.3d 1262 (11th Cir. 1998), the plaintiff's allegations must have factual

support. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir.) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))*, reh'g and suggestion for reh'g en banc denied*, 182 F.3d 938 (11th Cir.), *cert. dismissed*, 528 U.S. 948 (1999).

Once the movant presents evidence which, if not controverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001). If the factual context makes one party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wood v. City of Lakeland*, 203 F.3d 1288 (11th Cir. 2000). *See also Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) ("A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 248.

## FACTS

The undisputed facts in this case are straightforward.[1] At around 8:30 in the morning of February 19, 1999, a sergeant at the Hardee Correctional Institution found contraband electrical wires while conducting a search of the personal property of Williams' cellmate. The sergeant told the cellmate that Williams did not have anything to do with causing the cell search. Nevertheless, the cellmate allegedly accused Williams of "snitching" and threatened to get even. Williams overheard the threat.[2] Williams' Affidavit ¶ 4-7. Approximately half-an-hour later, Williams approached the sergeant while on the recreation yard and told him:

> that he has now seen and heard personally why Plaintiff was trying to move to another cell and now that he had seen and heard personally the threats, would he have Plaintiff immediately moved before any trouble occurred.

Williams' Affidavit ¶ 10. After passage of another half-an-hour, Williams approached Lt. Moskowitz and inquired about a cell change because he was not getting along with his cellmate.[3] Williams' Affidavit ¶ 13-14, Williams' Opposition ¶ 23-24, and Moskowitz's Affidavit ¶ 7. Lt. Moskowitz rejected the request but did mention to Williams about

---

[1] These facts are taken from four documents submitted by the parties: Landress' Affidavit in Support of Summary Judgment (hereinafter Landress' Affidavit") Exhibit A (Doc. 61-2), Moskowitz's Affidavit in Support of Summary Judgment (hereinafter Moskowitz's Affidavit") Exhibit B (Doc. 61-2), Williams' Opposition to Summary Judgment (hereinafter "Williams' "Opposition") (Doc. 64-1), and Williams' Affidavit in Opposition to Summary Judgment (hereinafter "Williams' Affidavit") (Doc. 64-2).

[2] These statements made by the sergeant and the cellmate are inadmissible hearsay statements and are not evidence properly admissible in court. *See* Fed.R.Civ.P. 56(e). Nevertheless, the defendants do not dispute them or otherwise challenge the accuracy of Williams' recitation of the statements.

[3] Williams alleges that the sergeant had said he would try to talk to Lt. Moskowitz about a cell change and in fact did so before Williams spoke with Lt. Moskowitz. Williams' Affidavit ¶ 11-12. Williams also alleges that Lt. Moskowitz stated that the sergeant did speak with her. Williams' Affidavit ¶ 15. Lt. Moskowitz denies the sergeant advised her that Williams was in immediate danger. Moskowitz's Affidavit ¶ 6. Neither Williams nor Lt. Moskowitz have provided an affidavit from the sergeant.

- 4 -

moving into protective management. Williams' Affidavit ¶ 25 and Moskowitz's Affidavit ¶ 8-10. Three hours after the cell search and the cellmate's threat to get even, the cellmate attacked Williams inside their locked cell, striking Williams with a pillowcase in which the cellmate had concealed a large combination padlock. Williams sustained a broken nose and fractures to other facial bones.

## ANALYSIS

Williams claims that Lt. Moskowitz enforced an unwritten policy requiring an inmate to either fight or go into protective custody, and that Warden Landress allowed such a policy to exist, contrary to the Florida Department of Corrections' rules and regulations. Williams does not, however, present sufficient evidence to support his claim.

Prison officials have the obligation to take reasonable measures to guarantee the safety of inmates, including the duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825 (1994). Neither negligence nor a lack of due care are actionable under section 1983. "[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by a lack of due care by prison officials." *Davidson v. Cannon,* 474 U.S. 344, 348 (1986). *See also, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (plaintiff must state more than negligence to state a cause of action under section 1983), and *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (to state a violation under the Eighth Amendment Cruel and

Unusual Punishment Clause, a prisoner must prove that there was deliberate indifference, a mere accident or negligence involving prison official is not sufficient).

As in this action, *Davidson* involved the alleged failure to protect an inmate from attack by another inmate. In that case, an inmate sent a note to prison staff on a Friday warning about a threat he had received. The officials failed to immediately address the concerns and the inmate was attacked that weekend. The Court said that the "lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." *Davidson,* 474 U.S. at 347-48.

To prevail on his claims, Williams must prove that the defendants were deliberately indifferent to his safety. The standard of proof of subjective mental intent required to show deliberate indifference was defined in *Farmer,* 511 U.S. at 837-38.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Under *Farmer*, liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and

- 6 -

disregarded that risk. *Farmer,* 511 U.S. at 837. Proof that the defendants should have perceived the risk, but did not, is insufficient. *Farmer,* 511 U.S. at 838; *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) ("There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" (quoting *Farmer*, 511 U.S. at 838)). Thus, the official must have a subjectively "'sufficiently culpable state of mind.'" *Cottrell*, 85 F.3d at 1491 (quoting *Farmer,* 511 U.S. at 834). This "requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Williams has not shown that Lt. Moskowitz and Landress had the requisite actual knowledge that he was going to be attacked.

Moreover, Williams' claim of an unconstitutional custom or policy also fails because he has not presented admissible evidence showing that the failure to prevent the attack was pursuant to a custom or policy. Although Williams presents affidavits from other inmates (Williams' Opposition Exhibit G) claiming that they were subjected to a "fight or go into protective management" policy, the proposed evidence is inadmissible because each of the events attested in the affidavits occurred several years after Williams' injury. Consequently, the admissible evidence before this court does not support a claim that the defendants enforced a custom or policy that was contrary to the Department's rules and procedures.[4]

---

[4] Williams does not dispute that there was a procedure in place that he could utilize to petition for a cell change. Williams did not utilize that procedure. Williams does not allege or argue that he told Lt. Moskowitz that he feared for his life and needed protective custody. To the contrary, he admits that Lt. Moskowitz "mentioned protective management" to him (Williams' Opposition ¶ 25), which he implicitly

- 7 -

Accordingly, the defendants' motion for summary judgment (Doc. 61) is **GRANTED**. The clerk shall enter a judgment in favor of the defendants and close this action.

ORDERED in Tampa, Florida, on September 20, 2005.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

SA/ro

---

rejected: "Without another word, I returned to my cell building" (Williams' Affidavit ¶ 16. Lt. Moskowitz specifically avers that he told Williams: "if he was in fear for his life I would have him placed in protective management immediately, which was within my authority; "Williams said no, and further said he just wanted to move to another cell; "I again informed him to follow the required rules if he wanted a cell change"; "Williams did not give me specific information to warrant a cell change, and, in fact rejected placement in protective management when I offered this to him;" and Williams "failed to supply me with the necessary information with which I could have taken measure to protect him." Moskowitz's Affidavit ¶¶ 10-12, 15, and 16.

- 8 -